**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IDRIS NAWABI,** | **1:13-cv-272-LJO-SAB** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE FINDINGS AND RECOMMENDATIONS (Doc. 56) RE DEFENDANTS' MOTION TO DISMISS (Doc. 45)** |
| **v.** | |
| **CATES, et al.,** | |
| **Defendants.** | |

# I. <u>INTRODUCTION</u>

Coccidioidomycosis, commonly known as "Valley Fever," is an infection caused by inhaling the spores of the fungus Coccidioides, which is endemic to the soil throughout the southwestern United States, and is particularly prevalent in California's San Joaquin Valley.[1] Valley Fever infections generally cause mild flu-like symptoms (or no symptoms at all), but the "disseminated" form of the disease, which occurs when the infection disseminates beyond the lungs and into other parts of the body, can cause serious, life-long health complications, and even death. Some groups of individuals, including certain ethnic groups, individuals over the age of 55, and individuals with compromised immune systems, are particularly susceptible of developing disseminated Valley Fever.

This is one of many civil rights cases currently pending in this district brought under 42 U.S.C. § 1983 ("§ 1983") by current and former inmates who contracted Valley Fever while incarcerated at prisons located in the San Joaquin Valley, where cocci naturally exist. Plaintiff Idris Nawabi ("Plaintiff"), a former state prisoner who contracted Valley Fever while incarcerated at Avenal State

---

[1] Valley Fever and the spores that cause it often are referred to interchangeably as "cocci."

1

Prison ("ASP"), which is located in Avenal, California, where cocci naturally exist, brings this suit against various individuals associated with ASP. Plaintiff alleges Defendants' intentional actions and inaction exposed him to an unreasonable risk of Valley Fever and, ultimately, caused him to contract the disease. Plaintiff further alleges that some of the Defendants, who are responsible for the medical care of inmates at ASP, were deliberately indifferent to his serious medical needs before and after he contracted the disease.

Currently pending before the Court is Defendant's motion to dismiss the complaint in its entirety. Doc. 45. The Magistrate Judge issued Findings and Recommendations ("F&Rs"), Doc. 56, to which the parties filed objections. Docs. 60, 61. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a de novo review of the F&Rs and the relevant record. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); Fed. R. Civ. P. 72(b)(3). For the following reasons, the Court ADOPTS the Magistrate Judge's recommendations, albeit at times for different or additional reasons.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[2]

Plaintiff, initially proceeding pro se and in forma pauperis, filed this case in February 2013. Doc. 1. The Magistrate Judge screened Plaintiff's complaint and dismissed it with leave to amend for failure to state any claim. Doc. 12 at 9-10. Plaintiff filed a first amended complaint, which was found to state "a cognizable claim against Defendants Hartley, Chapnick, B. Borges, and Correctional Officer Hancock for deliberate indifference to serious medical needs in violation of the Eight Amendment." Doc. 17 at 1. Then, after retaining counsel, Plaintiff filed the currently operative second amended complaint ("the SAC"). Docs. 15, 24, 28.

Plaintiff brings one claim against Defendants[3] under § 1983 for violation of his Eighth

---

[2] The Court has considered the entire record, but will discuss only the aspects of it necessary to resolve Defendants' motions to dismiss. The Court incorporates by reference the factual and procedural background outlined in the F&Rs. Doc. 56 at 1-7.

[3] Defendants are California Governor Edmund G. Brown, Jr.; Jeffrey Beard, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); James D. Hartley, Warden of ASP; Dr. R. Chapnick, Chief Medical Officer of ASP; B. Borges, an ASP nurse; and Handcock, an ASP correctional officer (collectively, "Defendants"). SAC at 1.

1    Amendment rights. Doc. 28, Second Amended Complaint ("SAC"), at 1. The Court incorporates by

2    reference the thorough outline of the SAC's allegations contained in the F&Rs; the following is only a

3    brief recitation of the SAC's material allegations.

4      Plaintiff, a 38-year-old man of Asian descent and citizen of Afghanistan, was deported to

5    Afghanistan in June 2014. *Id.* at ¶ 4. He contracted Valley Fever on January 27, 2012, while incarcerated

6    at ASP. *Id.*[4]

7      The cocci spores that cause Valley Fever, a well-known serious infectious disease, are endemic

8    to California's San Joaquin Valley, and are particularly prevalent in Fresno County and Kings County.

9    *Id.* at ¶ 15. Although the majority of those infected by cocci have "little to no symptoms and even those

10   minor symptoms resolve themselves within weeks," approximately 1-5% of those infected develop

11   disseminated Valley Fever. *Id.* at ¶ 16. It is uniformly fatal once it progresses to meningitis, if left

12   untreated. *Id.* at ¶ 17. Certain ethnic groups, including Asians, such as Plaintiff, are more susceptible to

13   developing disseminated Valley Fever. *Id.* at ¶¶ 19, 70-71.

14     Defendants were aware of a "pattern of ongoing unconstitutional violations [at ASP] by

15   numerous studies and internal information provided to them." *Id.* at ¶ 23. Despite this awareness,

16   Defendants remained deliberately indifferent in that they failed "to take adequate, necessary or

17   appropriate measures to investigate or prevent the continued perpetuation of the [unconstitutional]

18   conduct." *Id.* Specifically, Defendants knew of the risks posed by Valley Fever at ASP, yet they "failed

19   to implement event rudimentary measures recommended by the correctional authority's own medical

20   experts to protect inmates such as Plaintiff from [Valley Fever]." *Id.* at ¶ 24.

21     A number of reports, memoranda, and studies concerning Valley Fever at San Joaquin Valley

22   prisons, including ASP, produced by various medical expert and California public health agencies, and

23   the media were known to or circulated to Defendants. *Id.* at ¶¶ 25-28, 32, 43-44, 47-48, 50-51, 54, 59. In

24   

25   [4] It is unclear when Plaintiff first was housed at ASP.

addition, Defendants were aware that the California Correctional Health Care Services ("CCHCS") was placed into a federal Receivership in 2005 and that the federal Receiver had issued reports concerning the Valley Fever problems at San Joaquin Valley prisons, including ASP, and had made numerous recommendations on how to mitigate and protect inmates from the risks posed by cocci. *Id.* at ¶¶ 29, 32. Likewise, the California State Public Health Department identified a number of preventative measures in a 2006 report. *Id.* at ¶ 73. Defendants, however, did not implement most of the recommendations and intentionally failed to take appropriate action to remedy the Valley Fever situation at ASP. *Id.* at ¶¶ 31-32, 34, 35, 73. Although soil stabilization was implemented at PVSP to reduce cocci, "nothing was done at ASP." *Id.* at ¶ 52.

Since 2007, approximately 40 inmates at Pleasant Valley State Prison ("PVSP") and ASP have died of Valley Fever. *Id.* at ¶ 33. Defendants have known since at least 2006 that Valley Fever has had a disproportionate effect on Asian inmates, such as Plaintiff, because they are more susceptible to contracting the disease and developing the disseminated form of it. *Id.* at ¶ 35. Despite this knowledge, Defendants failed to protect Plaintiff from the risks posed by cocci at ASP and failed to ensure an adequate and timely response to his medical needs. *Id.* at ¶¶ 36-41. In particular, Defendants failed to provide Plaintiff with gear to protect him from cocci (*e.g.*, masks, respiratory filters, or other proper environmental safeguards) and assigned him to yard work for almost a year. *Id.* at ¶¶ 42. In addition, after Plaintiff contracted Valley Fever, Defendants failed to provide adequate medical care to treat the infection. *Id.* at ¶¶ 41.

Plaintiff therefore brings a claim against Defendants in their individual capacities under § 1983 in which he asserts Defendants violated his Eighth Amendment rights. *Id.* at 18. Plaintiff asserts Defendants were aware of his "hyper-susceptibility" of contracting Valley Fever and developing the disseminated form of the disease, yet refused to transfer him out of ASP and intentionally failed to reduce the excessive risk of cocci to which he was exposed while incarcerated at ASP. *Id.* at ¶¶ 78-82. Plaintiff seeks the establishment of a comprehensive, court-supervised medical monitoring and treatment

1    program, as well as compensatory and punitive damages. *Id.* at ¶¶ 83-84.

2         Defendants move to dismiss the SAC in its entirety. Doc. 45-1 at 2. Defendants argue the SAC

3    fails to state a claim against any Defendant and, even if it did, Defendants are entitled to qualified

4    immunity from the SAC's Eighth Amendment claim to the extent it is based on a conditions of

5    confinement theory of liability. *See id.* at 17. In addition, Defendants move to dismiss Plaintiff's request

6    for an injunction in the form of a "comprehensive, court-supervised" medical treatment program for

7    Plaintiff on the ground that Plaintiff cannot bring an injunctive relief claim against Defendants in their

8    individual capacities, particularly when the relief is based on Defendants' past conduct. *Id.* at 21.

9         The Magistrate Judge recommends that: (1) Plaintiff's Eighth Amendment conditions of

10   confinement claim be dismissed without leave to amend on the ground Defendants are entitled to

11   qualified immunity from the claim; (2) Plaintiff's injunctive relief request be dismissed without leave to

12   amend; and (3) Plaintiff's Eighth Amendment medical care claim be dismissed with leave to amend.

13   F&Rs at 41-42.

14                        **III. <u>STANDARD OF DECISION</u>**

15        A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

16   allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a

17   cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

18   *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss

19   for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes

20   the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the

21   pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

22        To survive a 12(b)(6) motion to dismiss, the Plaintiffs must allege "enough facts to state a claim

23   to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

24   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

25   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

                                         5

662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the Plaintiffs should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

**A. Plaintiff's Claim for Injunctive Relief.**

Plaintiff does not object to the Magistrate Judge's recommendation that the Court dismiss without leave to amend his request for injunctive relief in the form of the establishment of a comprehensive, court-supervised program of medical treatment. *See generally* Doc. 60. Accordingly, the Court ADOPTS IN FULL that recommendation.

**B. Plaintiff's Medical Needs Claim.**

As the F&Rs correctly recognized, the previous Magistrate Judge found that Plaintiff stated a claim for deliberate indifference to his serious medical needs against Defendants Hartley, Chapnick, Borges, and Hancock. F&Rs at 41. The Magistrate Judge recommends granting Plaintiff's request for

leave to amend that claim, *id.*, and Defendants only object to the extent that the claim can "pertain only

to . . . Chapnick and Nurse Borges" because Governor Brown, Beard, Hartley, and Hancock "did not

provide medical care and could not have been expected to do so." Doc. 61 at 8. Thus, Defendants

request that the F&Rs "should be modified . . . [to] specify the particular defendants at issue in the

medical claims." *Id.*

Under the law of the case, the Court is bound by the previous Magistrate Judge's conclusion that

Plaintiff has stated a medical needs claim against Defendants Hartley, Chapnick, Borges, and Hancock,

unless Defendants show that finding is clearly erroneous and would work a manifest injustice. *See*

*Pepper v. United States*, 562 U.S. 476, 506-07 (2011); *Gonzales v. U.S. Dep't of Homeland Sec.*, 712

F.3d 1271, 1277 (9th Cir. 2013).[5] Defendants have failed to make that showing. Accordingly, the Court

DENIES without prejudice Defendants' motion to dismiss Plaintiff's Eighth Amendment medical needs

claim and GRANTS Plaintiff leave to amend that claim.[6]

**C. The Eighth Amendment.**

Under the Eighth Amendment, "prison officials are . . . prohibited from being deliberately

indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Parsons v.*

*Ryan*, 754 F.3d 657, 677 (9th Cir. 2014); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer*

*v. Brennan*, 511 U.S. 825, 847 (1994) (prison official violates Eighth Amendment if he or she knows of

a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm).

"Deliberate indifference occurs when '[an] official acted or failed to act despite his knowledge of a

substantial risk of serious harm.'" *Solis v. Cnty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008)

---

[5] Other exceptions to the law of the case doctrine do not apply here. *See Gonzales*, 712 F.3d at 1277.

[6] Plaintiff suggests that the Magistrate Judge's recommendation that Plaintiff be granted leave to amend his medical care claims is unclear "as to whether he is permitted to amend the complaint to allege additional facts to show each defendants' deliberate indifferent in violation of the Eighth Amendment, including conditions of confinement, or whether he is limited to the Eighth Amendment medical care claims." Doc. 60 at 34. The F&Rs clearly recommend permitting Plaintiff to amend only his medical care claim. *See* F&Rs at 42 (recommending that "Plaintiff be granted leave to file an amended complaint to attempt to cure the deficiencies in his Eighth Amendment medical care claims"). As discussed below, Plaintiff is not granted leave to amend his conditions of confinement claim because Defendants are entitled to qualified immunity from the claim.

1    (emphasis added) (quoting *Farmer*, 511 U.S. at 841). Thus, a prisoner may state "a cause of action

2    under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference,

3    exposed him to [environmental conditions] that pose an unreasonable risk of serious damage to his

4    future health," *Helling*, 509 U.S. at 35.

5         "The second step, showing 'deliberate indifference,' involves a two part inquiry." *Thomas v.*

6    *Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). "First, the inmate must show that the prison officials were

7    aware of a 'substantial risk of serious harm' to an inmate's health or safety." *Id.* (quoting *Farmer*, 511

8    U.S. at 837). "This part of [the] inquiry may be satisfied if the inmate shows that the risk posed by the

9    deprivation is obvious." *Id.* (citation omitted). "Second, the inmate must show that the prison officials

10   had no 'reasonable' justification for the deprivation, in spite of that risk." *Id.* (citing *Farmer*, 511 U.S. at

11   844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found

12   free from liability if they responded reasonably.") (footnote omitted).

13   **C. Qualified Immunity.**

14        "The doctrine of qualified immunity protects government officials 'from liability for civil

15   damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

16   which a reasonable person would have known.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011)

17   (en banc) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity shields an

18   officer from liability even if his or her action resulted from a mistake of law, a mistake of fact, or a

19   mistake based on mixed questions of law and fact." *Id*. (citation and quotation marks omitted). "The

20   purpose of qualified immunity is to strike a balance between the competing need to hold public officials

21   accountable when they exercise power irresponsibly and the need to shield officials from harassment,

22   distraction, and liability when they perform their duties reasonably." *Id*. (citation and quotation marks

23   omitted). Accordingly, qualified immunity "protects 'all but the plainly incompetent or those who

24   knowingly violate the law.'" *Ashcroft v. al–Kidd*, 563 U.S. 731, S.Ct. 2074, 2085 (2011) (citation

25   omitted). The party asserting the defense of qualified immunity bears the burden of proof. *See Gomez v.*

1  *Toledo*, 446 U.S. 635, 639-41 (1980).

2      In determining whether an official is entitled to qualified immunity, courts employ a two-

3  pronged inquiry. *Id*. The facts are construed in the light most favorable to the plaintiff. *Estate of Ford v.*

4  *Ramirez–Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002). Courts are "permitted to exercise their sound

5  discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed

6  first in light of the circumstances in the particular case at hand." *Lal v. California*, 746 F.3d 1112, 1116

7  (9th Cir. 2014). First, a court must determine whether the official violated the plaintiff's constitutional

8  right. *Id*. If a constitutional violation is present, a court must then determine whether the constitutional

9  right was "clearly established in light of the specific context of the case" at the time of the events in

10 question. *Id*. (citation and quotation marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

11     "For the second step in the qualified immunity analysis—whether the constitutional right was

12 clearly established at the time of the conduct—the critical question is whether the contours of the right

13 were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing

14 violates that right.'" *Mattos*, 661 F.3d at 442 (quoting *al–Kidd*, 131 S.Ct. at 2083). "This inquiry . . .

15 must be undertaken in light of the specific context of the case, not as a broad general proposition"

16 *Saucier*, 533 U.S. at 202. "[W]here there is no case directly on point, 'existing precedent must have

17 placed the statutory or constitutional question beyond debate.'" *C.B. v. City of Sonora*, 769 F.3d 1005,

18 1026 (9th Cir. 2014) (citing *al–Kidd*, 131 S.Ct. at 2083).

19     However, "closely analogous preexisting case law is not required to show that a right was clearly

20 established." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) (internal citations

21 and quotations omitted). While "there must be some parallel or comparable factual pattern[,] . . . the

22 facts of already decided cases do not have to match precisely the facts with which [the government

23 employer] is confronted." *Id*. Rather, the preexisting case law must have provided fair warning that the

24 complained-of conduct was unlawful. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37

25 (9th Cir. 2003) (citation omitted). "Ultimately, the 'clearly established' prong of the qualified immunity

1    test shows deference towards the actions of government officials, but does not shield individuals who

2    are 'plainly incompetent or those who knowingly violate the law.'" *Reza v. Pierce*, __ F.3d __, 2015 WL

3    4899122, at *7 (9th Cir. Aug. 18, 2015) (citation omitted).

4         The Court recently found that some, but not all of the same Defendants were entitled to qualified

5    immunity from materially identical claims brought against them. *See Jackson v. Brown*, No. 13-cv-1055,

6    __ F. Supp. 3d __, 2015 WL 5522088 (E.D. Cal. Sept. 17, 2015), *amended by* __ F. Supp. 3d __, 2015

7    WL 5732826 (E.D. Cal. Sept. 28, 2015). The Court finds that the logic and conclusions of *Jackson*'s

8    qualified immunity analysis likewise apply to Defendants here. Defendants are entitled to qualified

9    immunity from Plaintiff's Eighth Amendment claim because the applicable law remains unsettled and

10   unclear.

11   **D. Analysis**

12        **a. The Constitutional Right at Issue.**

13        Although it is beyond dispute that Plaintiff has a constitutional right to safe conditions of

14   confinement, *see generally Farmer*, 511 U.S. 825, the level of detail at which a court must define the

15   contours of that right in the context of analyzing qualified immunity is less clear. As in *Jackson*, the

16   parties here offer various iterations of the constitutional right at issue with differing levels of specificity,

17   and the Court can conceive of other iterations. *See, e.g.*, Doc. 60 at 19; Doc. 61 at 11.

18        Ultimately, however, these varying iterations of the constitutional right at issue in this case are

19   distinctions without any practical difference. The Court need not determine the full contours of the

20   Eighth Amendment in the Valley Fever context, [7] what the constitutional right at issue is in these cases,

21

------

22   [7] The Supreme Court has cautioned that following a "rigid" qualified immunity analysis "comes with a price": the "expenditure of scare judicial resources on difficult questions that have no effect on the outcome of the case." *Pearson v.

23   Callahan*, 555 U.S. 223, 236-37 (2009). This is particularly true where "[a] decision on the underlying constitutional question in a § 1983 damages action . . . may have scant value when it appears that the question will soon be decided by a higher court." *Id.* at 237-28. As it stands, it appears that the Ninth Circuit soon will have the opportunity to resolve the issue of

24   whether Plaintiffs' Eighth Amendment rights were violated. *See Hines v. Youssef*, No. 1:13-cv-357 AWI JLT, 2015 WL 2385095 (E.D. Cal. May 18, 2015) (granting the defendants qualified immunity from the plaintiff's claim that they violated

25   his Eighth Amendment rights by placing him in a Valley Fever-endemic prison, where he contracted the disease), *appeal docketed*, No. 15-16145 (9th Cir. June 8, 2015).

1    or whether Plaintiff has pled a violation of his Eighth Amendment rights sufficiently. As discussed

2    below, under *any* definition of the constitutional right at issue in this case, and even assuming Plaintiff

3    has pled an Eighth Amendment claim, the substantial and unsettled case law concerning Valley Fever at

4    the district court level establishes that Defendants are entitled to qualified immunity from Plaintiff's

5    Eighth Amendment claim. This is a case where the Court can "rather quickly and easily decide that there

6    was no violation of clearly established law before turning to the more difficult question whether the

7    relevant facts make out a constitutional question at all." *Pearson*, 555 U.S. at 239. Accordingly, the

8    Court skips the first step of the *Saucier* qualified immunity analysis.

9              **b. Defendants Did Not Violate Clearly Established Law.**

10          The second prong of the qualified immunity analysis requires the Court to determine whether the

11   allegedly violated constitutional right was clearly established at the time Defendants allegedly violated

12   that right. *Mattos*, 661 F.3d at 442. Defendants must have had "'fair and clear warning' that their

13   conduct [was] unlawful." *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) (citations omitted).

14   In other words, the question is whether Defendants could have "reasonably but erroneously believed"

15   that their conduct did not violate Plaintiff's rights. *Id.* at 1074 (citing *Saucier*, 533 U.S. at 195).

16          It is unclear when part of Plaintiff's injuries—exposure to an unreasonable risk of Valley

17   Fever—occurred. Although Plaintiff alleges that he contracted Valley Fever in January 2012 while

18   housed at ASP, he does not allege when he first housed there, though he does allege that he was required

19   to do yard work at the prison beginning in May 2011. Nonetheless, the Court's conclusion below that

20   Defendants are entitled to qualified immunity remains the same irrespective of the time at which

21   Plaintiff's injuries occurred. Regardless of whether the Court looked only to the state of the law as it

22   existed in May 2011 (or earlier), or as it existed in January 2012, the Court would still conclude that the

23   right at issue was not clearly established. *See Jones v. Hartley*, No. 1:13-cv-1590-AWI-GSA-PC, 2015

24

25

WL 1276708, at *2-3 (E.D. Cal. Mar. 19, 2015) ("Courts have yet to find that exposure to valley fever

spores presents an excessive risk to inmate health." (collecting cases)); *Smith*, 2015 WL 3953367, at *3

(recognizing contrary conclusions in Valley Fever cases within this district). Thus, even if the Court

looked at the state of the law at the earliest possible time or at the latest possible time (*i.e.*, January

2012), the Court's conclusion that Defendants are entitled to qualified immunity would be the same. *See*

*Reza*, 2015 WL 4899122, at *7 (assessing state of law on date on which the plaintiff allegedly was

arrested unlawfully).

This is so because the circumstances in which an inmate's exposure to cocci while incarcerated

may support an Eighth Amendment claim are not clear. As the F&Rs correctly recognized, no binding

Supreme Court or Ninth Circuit precedent squarely addresses the issue. F&Rs at 8-19. The Ninth Circuit

has touched on the issue only in brief, undeveloped, and unpublished memorandum decisions.

For instance, in *Smith v. Schwarzenegger*, No. CV 1-07-1547-SRB, 2009 WL 900654, at *1

(E.D. Cal. Mar. 31, 2009), *rev'd*, 393 Fed. App'x 518 (9th Cir. 2010), the plaintiff brought, among other

claims, an Eighth Amendment claim asserting his right to be free from cruel and unusual punishment. In

that claim, the plaintiff alleged that he was held in KVSP, which is "located in the San Joaquin Valley

where [he is] subjected to the risk of contracting valley fever, in violation of the Eighth Amendment."

*Smith*, 2009 WL 900654, at *1. The plaintiff alleged that his being housing at KVSP posed an

unconstitutional threat to his health and safety. *Smith*, No. CV 1-7-1547-SRB, Doc. 21 at 7 ("Myself and

other inmates . . . in California State Prisoners located in the San Joaquin Valley . . . are being forcibly

subjected to contracting . . . Valley Fever"). The plaintiff also alleged that African-Americans, such as

himself, and other ethnic groups "are extremely susceptible to contracting Valley Fever." *Id.*

Notably, the plaintiff did not allege that he had contracted Valley Fever; he only alleged that he

"*may have contracted* Valley Fever but will not know for" many years if he contracted the disease. *Id.*

(emphasis added). The plaintiff further alleged that the defendants "have failed to act to remove [him]

. . . out of the endemic area where . . . inmates have been infected by Valley Fever and have [died] from

Valley Fever." *Id.* at 10. Thus, the plaintiff claimed that his Eighth Amendment rights had been violated "not only by possible present harm but by possible future harm, arising out of exposure to San Joaquin Valley Fever," and the defendants' failure to remove inmates from prisons located in areas endemic to Valley Fever. *Id.* at 10-15.

Visiting District Judge Bolton found that:

Plaintiff has failed to show that any of the named Defendants were deliberately indifferent to a serious risk of harm to Plaintiff's health. Plaintiff does not allege that Defendants were aware of a particular threat to Plaintiff's health or that Plaintiff has been harmed as the result of Defendants' actions or failure to act. Plaintiff alleges only that Defendants are aware of the general presence of valley fever in the areas in which Plaintiff is housed and that Plaintiff may contract valley fever. This is insufficient to establish an Eighth Amendment violation.

*Smith*, 2009 WL 900654, at *2. Accordingly, the claim was dismissed with prejudice. *Id.*

On appeal, the Ninth Circuit reversed in an unpublished, one-page memorandum decision. *Smith v. Schwarzenegger*, 393 Fed. App'x 518, 519 (9th Cir. 2010). The Ninth Circuit observed that the district court dismissed the claim "because it determined that [the plaintiff] failed to allege facts demonstrating that the defendants were deliberately indifferent to a serious risk to his health." *Id.* The court held that "[i]n dismissing with prejudice, the district court erred because it is not beyond doubt that [the plaintiff] could prove no set of facts in support of his claims that would entitled [*sic*] him to relief." *Id.* (citing *Helling*, 509 U.S. at 25 (a prisoner "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health")). The Ninth Circuit therefore vacated and remanded the case "with instructions to allow [the plaintiff] the opportunity to amend his complaint to allege facts demonstrating that the defendants are aware of a substantial risk to [his] health and have not taken action to prevent or minimize that risk." *Id.*[8]

---

[8] On remand, the plaintiff filed a fourth amended complaint against Cate, James Yates, the former warden of PVSP, Jeanne Woodford, the former Secretary of CDCR, and "John Doe Appeals Coordinator," among other defendants. *See Smith*, No. 1:07-cv-1547-SRB, Doc. 65 at 1. Judge Bolton summarized the allegations underlying that claim as follows:

Plaintiff alleges that his Eighth Amendment rights were violated when he was housed in an area with a known valley

1    Similarly, the Ninth Circuit reversed this Court with a one-page decision in *Johnson v. Pleasant*

2    *Valley State Prison*, 505 Fed. App'x 631 (9th Cir. 2013). In *Johnson*, the plaintiff brought one claim

3    under § 1983 in which he alleged that his exposure to and contraction of Valley Fever while at PVSP

4    violated his Eighth Amendment rights. *Johnson*, 2012 WL 1297380, at *1. The Magistrate Judge issued

5    F&Rs screening the complaint and summarized the plaintiff's allegations in part, as follows:

6    Plaintiff . . . is incarcerated at [PVSP], and brings this action against Defendants . . . alleging
     deliberate indifference in violation of the Eighth Amendment. Shortly after being transferred to
7    PVSP on August 20, 2010, Plaintiff began experiencing flu-like symptoms and was eventually
     diagnosed with Valley Fever. Plaintiff alleges that Defendants were aware through CDCR
8    memorandums that PVSP and seven other facilities were constructed in "hyperendemic" areas.
     Defendants allegedly have ignored a threat to Plaintiff, and every other prisoner who is housed at
9    PVSP, by placing them where they are exposed to "environmental hazards" in violation of the
     Eighth Amendment's prohibition against cruel and unusual punishment.

10   *Id.* The Magistrate Judge found that the plaintiff failed to state a claim under the Eighth Amendment,

11   reasoning:

12   To state a claim that the presence or prevalence of Valley Fever at PVSP constituted a danger to
13   Plaintiff's health, Plaintiff must allege facts sufficient to support a claim that prison officials
     knew of and disregarded a substantial risk of serious harm to him . . . . Even if the risk of
14   contracting Valley Fever is higher at PVSP than in other areas of the state, the Court declines to
     find that, due to its location, the prison itself constitutes a substantial risk of harm to inmates . . .
15   There is no support for such a sweeping proposition, and the Court finds that Plaintiff's Eighth
     Amendment claim arising from the mere fact that he is being housed at PVSP is not cognizable
16   under section 1983.

17

18   fever epidemic. Plaintiff alleges that he is particularly susceptible to valley fever because he is African-American
     and has tuberculosis and hepatitis C. Plaintiff further states that he was recently informed that he has now contracted
19   valley fever and that because of his hepatitis C, he cannot take the valley fever medication. Plaintiff claims that
     Defendants were aware of the severe risk to his health that results from housing him in this area, but failed to
     transfer him to another facility . . . .

20   Plaintiff claims that Defendants Cate and Woodford violated his Eighth Amendment rights when they failed to
21   develop policies for moving high risk inmates, such as Plaintiff, out of prisons located in areas known to have high
     incidences of valley fever. Plaintiff further claims that while housed at the Pleasant Valley State Prison, he filed a
     grievance regarding his susceptibility to valley fever and requesting a transfer, but that Defendant Appeals
22   Coordinator was deliberately indifferent to a risk to Plaintiff's health when he informed Plaintiff that he would not
     process the grievance unless Plaintiff had already contracted valley fever. Plaintiff claims that Defendant Appeals
23   Coordinator's refusal to process the grievance hindered his ability to grieve the issue at any of his later housing
     assignments. Finally, Plaintiff claims that Defendant Yates was aware of the risk of Plaintiff contracting valley
24   fever, but did not transfer him, and that Defendant Yates developed a policy requiring Plaintiff to "contract valley
     fever before he can receive relief from exposure to valley fever."

25   *Id.* at 3, 6. Judge Bolton found that these allegations, "[v]ery liberally construed . . . adequately stated Eighth Amendment
     claims against Defendants Cate, Woodford, Yates, and John Doe Appeals Coordinator." *Id.* at 6.

*Id.* at *3 (citations omitted).

Plaintiff filed objections to the F&Rs. *Id.* at Doc. 14. Citing *Farmer*, 511 U.S. 825, and *Helling*, 509 U.S. 25, the plaintiff argued that the defendants exhibited deliberate indifference to him by placing him at an excessive risk of contracting Valley Fever while incarcerated at PVSP. *Id.* at 2-3. This Court adopted the Magistrate Judge's F&Rs in full and dismissed the plaintiff's sole Eighth Amendment claim. *See* No. 1:11-CV-191-LJO-BAM PC, *Johnson v. Pleasant Valley State Prison*, Doc. 15.

The Ninth Circuit reversed, holding that

> dismissal of [the plaintiff's] action was improper at this early stage because [the plaintiff] alleged that prison officials were aware that inmates' exposure to valley fever posed a significant threat to inmate safety yet failed to take reasonable measures to avoid that threat . . . . *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (a prison official violates the Eighth Amendment prohibition against inhumane conditions of confinement if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm).

*Johnson*, 505 Fed. App'x at 632.

In *Johnson*, the Ninth Circuit "express[ed] no opinion as to the sufficiency or merit of [the plaintiff's] allegations." *Id.* And, as the F&Rs observed, the Ninth Circuit in *Smith* provided no "discussion of what would be required to state a claim under the Eighth Amendment." Doc. 164 at 36 n.5; *Smith*, 393 Fed. App'x at 519. Accordingly, the Court finds that *Johnson* and *Smith* do not clearly establish the right at issue in this case and did not give Defendants notice that they may have violated Plaintiffs' Eighth Amendment rights, particularly given that it is a "rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [a court] can conclude that the law was clearly established on the basis of unpublished decisions only." *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002).[9] In short, the Ninth Circuit's Valley Fevers decisions could not have put

---

[9] This conclusion is further reinforced by the Ninth Circuit's decision in *Holley v. Scott*, 576 Fed. App'x 670 (9th Cir. 2014), another one-page memorandum decision addressing an Eighth Amendment claim premised on the plaintiff-inmate's exposure to Valley Fever spores while incarcerated. In that case, the Magistrate Judge screened the plaintiff's second amended complaint, which alleged an Eighth Amendment claim based on his exposure to Valley Fever spores while incarcerated at PVSP, and dismissed the claim without leave to amend. *Holley v. Scott*, No. 1:12-cv-1090-MJS (PC), 2013 WL 3992129, at *5 (E.D. Cal. Aug. 1, 2013). The plaintiff alleged that he was an African-American at medically high risk of contracting

Defendants on notice that their conduct was unlawful.

In the absence of controlling authority, a defendant nonetheless may not be entitled to qualified immunity if the illegality of the defendant's conduct was overwhelmingly obvious, *id.*, or "a consensus of cases of persuasive authority" would have put the defendant on notice that his/her conduct was unlawful. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The F&Rs contain a thorough review of Valley Fever cases in this district. *See* F&Rs at 28-31. Simply put, those cases show that there has been longstanding disagreement among the judges of this district as to whether and under what circumstances inmates housed at prisons in the San Joaquin Valley, where Valley Fever is endemic, may state an Eighth Amendment claim for being exposed to Valley Fever spores while incarcerated. *See id.*

This disagreement has led to diametrically opposed conclusions at times. Critically, judges have disagreed as to whether allegations that an inmate's ethnicity increases the risk of contracting Valley Fever and developing disseminating Valley Fever states an Eighth Amendment claim.[10] Judges also

---

Valley Fever because of his race and health status. *Id.* at *1. The Magistrate Judge found that the plaintiff failed to allege facts demonstrating that the defendants acted with deliberate indifference because the plaintiff did not allege that the defendants were aware of the risks posed by Valley Fever spores at PVSP. *Id.* at *5. On appeal, the Ninth Circuit affirmed. *Holley*, 576 Fed. App'x at 670 (citing *Farmer*, 511 U.S. at 837). Although *Smith* and *Johnson* involved materially similar allegations, the Ninth Circuit's reversals in those cases perhaps can be explained by the fact that they involved original complaints dismissed without leave to amend, whereas *Holley* involved a second amended complaint filed after the Magistrate Judge had "twice previously instructed Plaintiff on the legal standard and given him opportunity to allege facts which meet it," yet the second amended complaint failed to do so. *Holley*, 2013 WL 3992129, at *5. In addition, the plaintiff in *Holley* had satisfied the first, objective prong of his Eighth Amendment claim, but had failed on the second, subjective prong of the claim in that he failed to allege facts showing that the defendants knew of the alleged risk of Valley Fever to which he was exposed. *See id.* at *4-5; *Holley*, Fed. App'x at 670 ("The district court properly dismissed Holley's action because Holley failed to allege facts showing that defendants were deliberately indifferent to a risk of Holley contracting Valley Fever by housing him at Pleasant Valley State Prison.") (citation omitted); *but see Sullivan v. Kramer*, 609 Fed. App'x 435, 436 (9th Cir. 2015) (reversing dismissal of civil detainee's safe conditions claim in which he alleged the defendant "knew of the life-threatening dangers of valley fever . . . but failed to take any preventative measures to protect [him]"); *Samuels v. Ahlin*, 585 Fed. App'x 636, 637 (9th Cir. 2014) (reversing dismissal of civil detainee's safe conditions claim in which he alleged defendants "knew of the life-threatening risk of building Coalinga State Hospital in a highly endemic area for valley fever, but nonetheless approved or failed to stop the facility's construction").

[10] *Compare, e.g.*, *Smith v. Brown*, No. 1:12-cv-238-AWI-JLT (PC), 2012 WL 1574651, at *3-4 (E.D. Cal. May 3, 2012) (holding that African-American plaintiff's allegations that (1) he was exposed to Valley Fever while incarcerated at PVSP, a "hyperendemic area" experiencing an "outbreak of illness"; (2) African-Americans are more susceptible to Valley Fever; and (3) the defendants knew of Valley Fever risks but failed to act were insufficient to state Eighth Amendment claim because the defendants could not "be held liable for housing Plaintiff in an area where there is a potential to be exposed to Valley Fever spores"); *Clark v. Igbinosa*, No. 1:10-cv-1336-DLB PC, 2011 WL 1043868, at *2 (E.D. Cal. Mar. 21, 2011) (holding that the African-American plaintiff's allegations that (1) African-Americans are the highest risk group for disseminated Valley Fever and (2) being housed at PVSP did not state Eighth Amendment claim because "[g]oing to an area which contains valley fever and contracting valley fever are not sufficient to state an Eighth Amendment claim"); *James v. Yates*, No. 1:08-cv-1706-DLB

1  have disagreed as to whether an inmate's allegations that medical conditions increase the risk of

2  contracting Valley Fever and developing disseminated Valley Fever states an Eighth Amendment

3  claim.[11]

4          The Court acknowledges that not all Valley Fever cases concern the same factual allegations or

5  the same disposition for the same reasons. Unlike Plaintiff here, some plaintiffs in Valley Fever cases

6  have simply alleged their constitutional rights were violated because they contracted Valley Fever while

7  incarcerated. *See, e.g.*, *King*, 2009 WL 546212, at *4 ("[T]o the extent that Plaintiff is attempting to

8  pursue an Eighth Amendment claim for the mere fact that he was confined in a location where Valley

---

PC, 2010 WL 2465407, at *3-4 (E.D. Cal. June 15, 2010) (same); *Moreno v. Yates*, No. 1:07-cv-1404-DGC, Doc. 1 at 9-10, 2010 WL 1223131, at *2 (E.D. Cal. Mar. 24, 2010) (granting summary judgment against plaintiff-inmate who contracted Valley Fever at PVSP and who alleged certain racial groups are more susceptible to developing disseminating Valley Fever because "society plainly tolerates the health risks" posed by Valley Fever at PVSP); *King v. Avenal State Prison*, No. 1:07-cv-1283-AWI-GSA (PC), 2009 WL 546212, at *4 (E.D. Cal. Mar. 4, 2009) ("[N]o courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health") *with, e.g.*, *Chaney v. Beard*, No. 1:14-cv-369-MJS, 2014 WL 2957469, at *3 (E.D. Cal. June 30, 2014) ("Plaintiff alleges that he is an African American male and is therefore at an increased risk of harm from Valley Fever. This is sufficient to satisfy the first element of Plaintiff's Eighth Amendment claim.").

[11] *Compare, e.g.*, *Moreno*, 2010 WL 1223131, at *2 (granting summary judgment against plaintiff-inmate because "society plainly tolerates the health risks" posed by Valley Fever at PVSP); *Gilbert v. Yates*, No. 1:09-cv-2050-AWI-DLB, 2010 WL 5113116, at *1, 3 (E.D. Cal. Dec. 9, 2010) (plaintiff with asthma, pulmonary conditions, and hepatitis C who contracted Valley Fever while incarcerated at PVSP did not state Eighth Amendment medical needs claim because even "[a]ssuming that the risk of contracting Valley Fever is higher at PVSP than in other areas of the state and that the disease is fatal in some cases, the Court declines to find that the prison itself, due to its location, constitutes a substantial risk of harm to inmates"), *aff'd*, 479 Fed. App'x 93 (9th Cir. 2012); *Schroeder v. Yates*, No. 1:10-cv-433-OWW-GSA PC, 2011 WL 23094, at *1 (E.D. Cal. Jan. 4, 2011) (inmate with emphysema and chronic obstructive pulmonary disease could not state claim for exposure to Valley Fever spores while incarcerated at PVSP); *Ayala v. Yates*, No. 1:10-cv-50-MJS (PC), 2011 WL 4527464, at *3 (E.D. Cal. Sept. 28, 2011) ("Exposure to [Valley Fever] at PVSP is not in and of itself an excessive risk to inmate health; Defendants had no duty to take steps to reduce the risk."); *Miller v. Brown*, No. 1:12-cv-1589-LJO-BAM PC, 2013 WL 6712575, at *6 (E.D. Cal. Dec. 18, 2013) (dismissing inmate's Eighth Amendment claim, in part, because he did not "indicate if he in fact contracted Valley Fever") *with, e.g.*, *Whitney v. Walker*, No. 1:10-cv-1963 DLB PC, 2012 WL 893783, at *4 (E.D. Cal. Mar. 15, 2012) (plaintiff's allegation that his immune system was compromised by cancer stated Eighth Amendment claim for contraction of Valley Fever while incarcerated at ASP); *Owens v. Trimble*, No. 1:11-cv-1540-LJO-MJS (PC), 2012 WL 1910102, at *2 (E.D. Cal. May 25, 2012) ("Plaintiff has alleged that his asthma increases the risk of infection [of Valley Fever] and thus satisfies the first element of his Eighth Amendment claim."); *Sparkman v. Calif. Dep't of Corrections and Rehab.*, No. 1:12-cv-1444-AWI-MJS (PC), 2013 WL 1326218, at *3 (E.D. Cal. Mar. 29, 2013) ("Exposure to Valley Fever with such a preexisting lung condition is also a serious medical condition sufficient to satisfy the first prong of an Eighth Amendment claim based on Valley Fever exposure.") (citations omitted); *Wood v. Brown*, No. 1:11-cv-1846-RRB, 2013 WL 1759099, at *2 (E.D. Cal. Apr. 24, 2013) (holding that inmate could potentially state Eighth Amendment claim for being transferred to ASP where he contracted Valley Fever if officials responsible for transfer were properly named); *see also Beagle*, 2014 WL 9866913, at *10 (disagreeing with findings and recommendations and holding that inmates "need not demonstrate that they are at a higher risk of contracting Valley Fever or a more severe form of the disease to state an Eighth Amendment claim"); *see also Borquez v. Arpaio*, No. CV 07-226-PHX-DGC (JCG), 2007 WL 625925, at *3 (D. Ariz. Feb. 26, 2007) (holding that plaintiff-inmate's allegation "that he has been exposed to asbestos and valley fever" while incarcerated failed to state Eighth Amendment claim).

Fever spores existed which caused him to contract Valley Fever, he is advised that no courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health"). Other cases have involved inmates who, unlike Plaintiff, had no increased risk factors for contracting Valley Fever or disseminated Valley Fever. *See, e.g.*, *Ayala*, 2011 WL 4527464, at *1; *see also Gaona v. Yates*, No. 1:09-cv-999-SKO PC, 2010 WL 2843163, at *3 (E.D. Cal. July 19, 2010) (finding plaintiff could not state Eighth Amendment claim because he only exhibited "flu-like symptoms" when he contracted Valley Fever while incarcerated at PVSP). And in some cases, the plaintiff did not allege the defendant (or defendants) knew of a risk posed by Valley Fever. *See, e.g.*, No. 1:13-cv-869-AWI-SKO (PC), 2015 WL 3953367, at *4 (E.D. Cal. June 29, 2015) ("Plaintiff's allegations regarding the named defendants' involvement remain speculative at best"); *Pearson v. Yates*, No. 1:11-cv-72-DLB PC, 2011 WL 6100805, at *5 (E.D. Cal. Dec. 6, 2011) ("Plaintiff fails to allege facts indicating that Defendants . . . knew of constitutional violations and failed to act"). And in some cases, the plaintiff did not allege the defendant's (or defendants') acts or omissions caused the plaintiff to be exposed to a substantial risk of Valley Fever. *See, e.g.*, *Tholmer v. Yates*, No. 1:06-cv-1403-LJO-GSA, 2009 WL 174162, at *3 n.3 (E.D. Cal. Jan. 26, 2009) ("Plaintiff does not allege that the acts or omissions of Defendants have caused an excessively high risk of contracting valley fever at PVSP.").

Some cases, however, involved allegations that are materially identical to Plaintiff's allegations. In *Moreno*, for instance, the plaintiff contracted Valley Fever in 2006 while housed at PVSP in. 07-cv-1404-DGC, Doc. 1 at 7. The plaintiff alleged the defendants knew that (1) PVSP was in a "hyperendemic" location; (2) "[p]eople with weakened immune systems and of certain racial groups are susceptible [to] developing . . . disseminated valley fever"; (3) "the infection rate among prisoners is 38 times greater than for residents of Coalinga and 600 times greater than for residents of Fresno county"; (4) that there was "a high probability" that plaintiff would be infected with Valley Fever; and (5) the defendants had not "done anything to protect [his] health and personal safety." *Id.* at 7-18. The court granted the defendants' motion for summary judgment, reasoning that "[b]y placing a prison and other

18

1  extensive facilities in the PVSP location, attended by prison employees, officials, and support personnel,

2  as well as inmates, society plainly tolerates the health risks of that location." *Moreno*, 2010 WL

3  1223131, at *2.

4      In *Jones v. Igbinosa*, the plaintiff, who contracted Valley Fever while incarcerated at PVPS,

5  alleged that PVSP "is [in] an epidemic area and that Blacks Afro-Americans and Filipinos are at greater

6  risk of complications from [Valley Fever]." No. 08-cv-163-LJO-SKO PC, 2010 WL 2838617, at *2

7  (E.D. Cal. July 19, 2010), *aff'd*, 467 Fed. App'x 604 (9th Cir. 2012). The court dismissed the complaint

8  based on, among other things, a finding that "the risk posed by valley fever was [not] 'sufficiently

9  serious'" because the plaintiff did not allege that "he suffered any serious life threatening complications

10 from the disease," and alleged that "'[i]n most cases, the infection . . . is usually handled by the body

11 without permanent damages." *Id.* at *3.

12     The plaintiff's allegations in *Ayala* were largely the same as those in *Jones*. *See* 2011 WL

13 4527464, at *1. Although *Ayala* did not allege that certain individuals are more susceptible to Valley

14 Fever, he alleged that PVSP, where he was housed, is "hyper-endemic for Valley Fever infection and

15 has dramatically higher rates of infection than other penal institutions," yet the defendants "did not act to

16 mitigate the risk." *Id.*  The court dismissed the plaintiff's Eighth Amendment claim without leave to

17 amend on the ground that "Plaintiff's claim that the Defendants are liable because they were aware of

18 the risk and did not act to mitigate the likelihood of infection does not state an actionable claim." *Id.* at

19 *3. The court further held that "[e]xposure to the disease at PVSP is not in and of itself an excessive risk

20 to inmate health; Defendants had no duty to take steps to reduce the risk." *Id.* The court therefore

21 concluded that the plaintiff "cannot state a cognizable claim based on the fact that he was exposed to

22 Valley Fever at PVSP" because "[c]laims based on Valley Fever exposure and contraction fail to satisfy

23 the first prong of the Eighth Amendment analysis, i.e., that the deprivation is sufficiently serious." *Id.*

24     In *Smith v. Brown*, the plaintiff, who contracted Valley Fever in 2009 while incarcerated at

25 PVSP, alleged as follows:

1   Plaintiff contends that "black inmates in general are highly susceptible to Valley Fever."  He also
2   claims that each of the defendants was aware that Plaintiff was being sent to a "hyperendemic"
    area institution, but refused to warn him of such a risk. Plaintiff alleges that Defendants failed to
    follow directions set forth in a November 20, 2007 Memorandum regarding "Exclusion of
3   Inmate–Patients Susceptible to Coccidioidomycosis from Highest Risk Area Institutions" that
    would have prevent him from acquiring Valley Fever. Plaintiff claims Defendants' actions and
4   failures to act violated the Eighth Amendment.

5   2012 WL 1574651, at *3. Observing that "[c]ourts have found that claims like Plaintiff's which allege

6   Eighth Amendment violations for contracting Valley Fever are insufficient to establish an Eighth

7   Amendment violation," the court held "Defendants cannot, therefore, be held liable for housing Plaintiff

8   in an area where there is a potential to be exposed to Valley Fever spores." *Id.* at *4.

9        In *Cooper v. Igbinosa*, the plaintiff, a diabetic incarcerated at PVSP, failed to state an Eighth

10  Amendment claim. 2012 WL 5186660, at *2 (E.D. Cal. Oct. 17, 2012). The plaintiff alleged:

11  From 2001 through 2005, soil at PVSP was disturbed greatly for the construction of a mental
    health hospital and a segregation unit. Defendant Yates worked at PVSP beginning in October
12  2003. He was aware of the presence of valley fever in the area. Defendants Yates and Igbinosa
    are responsible for all inmates' health and safety. During the construction, Defendants had notice
13  of an increase in valley fever cases amongst the inmates at PVSP, from 80 in 2003, 66 in 2004,
    187 in 2005, and 1145 in 2006. Valley fever is a disease arising from spores found near the
14  surface of soil, or in the air when the soil is disturbed. Defendants did not take any corrective
    measures or give fair notice regarding the outbreak of valley fever from 2003 through 2006, such
15  as preventing or erecting barriers for blowing dirt, educating inmates and staff, increasing ground
    cover, advising inmates to stay indoors, wet the ground, or give out masks. Plaintiff is diabetic.
16  In June or July of 2006, Plaintiff became sick and went to the medical on B-yard at PVSP . . . .
    Plaintiff was hospitalized for weeks because of valley fever, suffering chronic breathing
17  problems, acute coughing, severe weight loss, and chest and heart problems. Plaintiff remained
    under doctor care for valley fever through 2010.

18  The court dismissed the plaintiff's claim, finding that the plaintiff had "not sufficiently alleged facts

19  which indicate that the harm Plaintiff risked was an excessive risk of serious harm." *Id.* at *2. Although

20  the plaintiff had "alleged facts which indicate that the chance of contracting valley fever increased

21  during the construction period," he had "not alleged facts which indicate that this increase in risk was

22  excessive." *Id.* at *2; *see also Barnhardt v. Cate*, No. 1:10-cv-1351-LJO-GBC (PC), 2011 WL 2446372,

23  at *5 (E.D. Cal. June 15, 2011) (allegation that diabetes made the plaintiff more susceptible to

24  contracting Valley Fever did not support Eighth Amendment claim).

25

1    For similar reasons, the court dismissed without leave to amend the plaintiff's Eighth

2    Amendment claim in *Harvey v. Gonzalez*, No. CV 10-4803-VAP (SP), 2011 WL 4625710 (C.D. Cal.

3    July 27, 2011), *adopted in full*, 2011 WL 4625700 (C.D. Cal. Oct. 5, 2011). The plaintiff alleged his

4    exposure to Valley Fever while incarcerated at PVSP violated his Eighth Amendment rights. *Id.* at *2.

5    The plaintiff alleged that African-Americans are at a "far greater risk of coming down with [Valley

6    Fever] based on their immune systems." *Id.* at *1. The court held that "[m]ere exposure to [cocci] is

7    insufficient to constitute an excessive risk of harm to [the plaintiff's] health." *Id.* at *3. Although the

8    plaintiff's ethnicity was unknown, the court held that, even if plaintiff were able to allege that he was an

9    African-American and that the defendants knew African-Americans were at higher risk of contracting

10   Valley Fever, "that still would be insufficient to state a claim that defendants deliberately exposed [him]

11   to an excessive risk of harm by housing him at PVSP." *Id.*

12   In *Gilbert*, the plaintiff, an inmate at PVSP who alleged his asthma, pulmonary conditions, and

13   hepatitis C rendered him more vulnerable to Valley Fever, failed to state a claim based on his exposure

14   to and contraction of Valley Fever while incarcerated at PVSP. 2010 WL 5113116, at *1, 3. The court

15   reasoned that even "[a]ssuming that the risk of contracting Valley Fever is higher at PVSP than in other

16   areas of the state and that the disease is fatal in some cases, the Court declines to find that the prison

17   itself, due to its location, constitutes a substantial risk of harm to inmates."[12] *Id.* at *3.

18   Other judges, however, have found that "the first prong of an Eighth Amendment claim is

19   satisfied where the plaintiff has identified a factor responsible for either increasing the risk of

20   contraction [of Valley Fever] or the severity of infection." *Chaney v. Beard*, No. 1:14-cv-369-MJS, 2014

21   WL 2957469, at *3 (E.D. Cal. June 30, 2014). African-American ethnicity has been accepted as an

22   increased risk factor, as have various medical conditions, particularly those that affect an individual's

23   immune system. *See id.* (collecting cases); *see also Hunter v. Yates*, No. 1:07-cv-151-AWI-SMS-PC,

24

25   [12] The Court notes that the Ninth Circuit apparently rejected this logic in *Johnson*, 505 Fed. App'x 631.

1    2009 WL 233791, at *3 (E.D. Cal. Jan. 30, 2009) (plaintiff alleging he "was exposed to a high risk of

2    contracting valley fever" stated claim "[u]nder minimal federal notice pleading standards"); *Thurston v.*

3    *Schwarzenegger*, No. 1:08-cv-342-AWI-SMS PC, 2008 WL 2020393, at *1 (E.D. Cal. May 9, 2008)

4    (plaintiff stated claim based on allegations that "his medical condition puts him at risk for contracting

5    Valley Fever"). Some judges have found that a plaintiff need not be at a heightened risk for contracting

6    Valley Fever or developing disseminated Valley Fever to state an Eighth Amendment claim. *See, e.g.*,

7    *Beagle*, 2014 WL 9866913, at *10; *Jackson v. Davey*, No. 1:14-cv-1311-LJO-MJS (PC), 2015 WL

8    3402992, at *5 (E.D. Cal. May 27, 2015).

9           Given this obvious, legitimate, and reasonable disagreement among judges, the Court finds that

10   Yates is entitled to qualified immunity from Plaintiff's Eighth Amendment claim, regardless of how its

11   underlying constitutional right is defined. Even assuming Yates's conduct was unlawful in this case—an

12   issue which the Court need not and does not decide—the disagreement among judges with regard to

13   analogous Valley Fever cases brought by inmates in San Joaquin Valley prisons establishes that the right

14   at issue here was not sufficiently clear such that Yates had "'fair warning' that [his] conduct was

15   unlawful." *Flores*, 324 F.3d at 1137.[13] "If judges thus disagree on a constitutional question, it is unfair to

16   subject [public officials] to money damages for picking the losing side of the controversy." *Wilson*, 526

17   U.S. at 618; *see also Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004) ("The fact that there

18   was a conflict in the views of district court judges on the issue demonstrates that the constitutionality of

19   the regulations was not clearly established.").

---

[13] The Court recognizes that many of the cases discussed above concerning the district courts' disagreement on Valley Fever issues postdate Plaintiff's injuries. But, in the Court's view, the fact that the law remains unclear *today* means that it has never been clearly established. *See Rish v. Johnson*, 131 F.3d 1092, 1096 n.5 (4th Cir. 1997) ("The events underlying the inmates' claim occurred over the period of 1988 to 1992. During this period, Eighth Amendment jurisprudence was evolving. However, for ease of discussion, we consider the state of law at the end of the period at issue, reasoning that if the law was not so clearly established in 1992 that the prison officials were not entitled to qualified immunity, it could not have been so earlier."). Although "the fact that a single judge, or even a group of judges, disagrees about the contours of a right does not automatically render the law unclear," *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 378 (2009), given the extensive and substantial litigation concerning Valley Fever that has occurred at the district court level, to find that Defendants are not entitled to qualified immunity would require the Court to conclude that a number of judges were unaware of or repeatedly disregarded clearly established law for years. The Court declines to entertain that conclusion.

1    Further, because of this disagreement, the Court cannot find that Yates's conduct was obviously

2    illegal (much less overwhelmingly so) because "[t]he state of the law was at best undeveloped." *Wilson*,

3    526 U.S. at 617.[14] This is particularly true given that the issue of Valley Fever at San Joaquin Valley

4    prisons has been the subject of substantial litigation within this District,[15] yet no "consensus of cases"

5    has emerged "such that a reasonable [prison official] could not have believed that his actions were

6    lawful." *Id.* Although that litigation has shed some light on the issue, no authority has "fleshed out 'at

7    what point the risk of harm from [Valley Fever] becomes sufficiently substantial for Eighth Amendment

8    purposes.'" *Estate of Ford*, 301 F.3d at 1051 (quoting *Farmer*, 511 U.S. at 834 n.3)). The Court

9    therefore GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiff's Eighth

10   Amendment conditions of confinement claim because Defendants have established that they are entitled

11   to qualified immunity from the claim.

12                              **V. <u>CONCLUSION AND ORDER</u>**

13    For the foregoing reasons, the Court:

14    1. ADOPTS IN FULL the Magistrate Judge's recommendation to DISMISS WITHOUT LEAVE

15    TO AMEND Plaintiff's claim for injunctive relief;

16    2. GRANTS WITHOUT LEAVE TO AMEND Plaintiff's Eighth Amendment conditions of

17    confinement claim on the ground Defendants are entitled to qualified immunity from the claim;

18   _____

19   [14] The Court notes that visiting District Judge Bolton, relying on this Court's prior order in *Jackson v. California*, No. 1:13-
20   cv-1055-LJO-SAB, 2014 WL 670104 (E.D. Cal. Feb. 20, 2014), recently found that former Governor Schwarzenegger and
     various PVSP and ASP officials were not entitled to qualified immunity from an African-American plaintiff's claim that his
     contracting Valley Fever while housed at PVSP violated his Eighth Amendment rights. *See Smith v. Schwarzenegger*, No.
21   07-cv-1547 SRB (PC), 2015 WL 106337, at *2 (E.D. Cal. Jan. 7, 2015). This further reinforces the Court's conclusion that
     the unsettled state of the law pertaining to Valley Fever cases within this district entitles Defendants to qualified immunity
22   from Plaintiffs' Eighth Amendment claim.

23   [15] *See Hines*, 2015 WL 2385095, at *4 ("A Westlaw search of all federal decisions in the Ninth Circuit using the word string
     Valley Fever" returns about 420 responses with case filings beginning around 1976 . . . . Beginning in 2005, the frequency of
     case filings increases dramatically and the typical type of case changes dramatically. Even a casual inspection of the listings
24   from cases commenced in the last ten years shows that the overwhelming majority involve claims against state or federal
     correctional institutions in what has been termed the hyper-endemic cocci zone of the southern San Joaquin Valley"); *Smith*,
     2015 WL 3953367, at *3 (recognizing disagreement between judges of this Court concerning Valley Fever cases as of June
25   29, 2015).

1    and

2        3. DENIES without prejudice Defendants' motion to dismiss Plaintiff's Eighth Amendment

3    medical needs claim and GRANTS Plaintiff leave to amend that claim.

4        Plaintiff will have one final opportunity to amend. Any further amended complaint shall be filed

5    on or before November 9, 2015.

6

7    IT IS SO ORDERED.

8        Dated:   **October 7, 2015**                **/s/ Lawrence J. O'Neill**
                                               UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25